203 So.2d 74 (1967)
Paul J. BURLINGAME and Mrs. Paul J. (Violet T.) Burlingame, Individually, and as Father and Mother and Next Friend of James D. Burlingame, Laura J. Burlingame, Roger A. Burlingame, Elizabeth J. Burlingame and Paul T. Burlingame, their minor children
v.
SOUTHWEST DRUG STORES OF MISSISSIPPI, INC., and Charles E. Hill.
No. 44486.
Supreme Court of Mississippi.
October 2, 1967.
Suggestion of Error Overruled October 30, 1967.
*75 Alben N. Hopkins, Daniel, Coker & Horton, Jackson, for appellants.
Elizabeth Hulen, Watkins & Eager, Jackson, for appellees.
PATTERSON, Justice:
This is an appeal from a judgment of the Circuit Court of Hinds County in the sum of $5,000 against Southwest Drug Stores of Mississippi, Inc. and its employee, Charles E. Hill, for the wrongful death of Katherine Anne Burlingame, a twelve-year-old child.
The surviving brothers, sisters, mother and father, appeal from an order overruling their motion for a new trial on damages alone, and assign as error:
1. That the verdict was so grossly inadequate as to evince passion, prejudice, and bias on the part of the jury.
2. That the uncontradicted evidence shows that the amount of the verdict bears no reasonable relation to the loss suffered.
3. That the verdict was so grossly inadequate as to indicate on its face that the jury totally ignored the instructions of the court on the question of damages.
The defendants contend that the judgment is adequate by normal standards and cite cases where comparative awards have been made. They urge that the dangers emanating from the hereinafter related facts were so open and obvious, even to a child, that the jury was entitled to and probably did consider contributory negligence in assessing damages. The defendants contend in the alternative that if the damages are found by this Court to be inadequate, the cause should be remanded on all issues and not restricted to the ascertainment of damages alone. The question presented is whether the verdict of $5,000, of which $2,430.60 was for medical, hospital and burial expenses, was inadequate, and if so, whether the retrial should be upon the question of liability as well as damages.
The deceased, Katherine Anne Burlingame, is survived by Mr. and Mrs. Paul Burlingame, her mother and father, and by three brothers and two sisters. Katherine was an outgoing and enthusiastic girl, described by her teacher as being a good, average sixth-grade student. She played the piano and the French horn in the band of her family and sang in the church choir. She was also an obedient and diligent worker in the home. Katherine was fond of animals, and particularly loved horseback riding. She had an arrangement with the Lazy-Three Ranch on Rainey Road whereby she fed hay to the horses and helped clean the barn for the privilege of riding and exercising horses that were kept there.
On the afternoon of June 15, 1965, at approximately 4:30 p.m., Katherine was struck by an automobile. She died five days later after undergoing brain surgery for the removal of a blood clot resulting from the accident. She was unconscious during this time with the exception of a very brief interval when she uttered a few words to an attendant in the ambulance enroute to the hospital.
The record reflects these salient facts relating to the accident. Rainey Road is a hard-surfaced residential thoroughfare running generally north and south. The exit from the Lazy-Three Ranch opens onto the west side of Rainey Road; there is no passageway across from and opposite the exit to the ranch. Five hundred feet north of the exit there is on the right of the road a sign which reads "DANGER EXIT 500 Feet." The roadway southward from this sign is slightly uphill; from its crest to the exit of the Lazy-Three Ranch, a distance of 253 feet, it *76 slightly declines. The exit from the ranch is a gravel roadway which terminates in a cattle gap, the east edge of which is 19 feet from the western edge of the pavement. The cattle gap itself was estimated by a patrolman who investigated the accident to be 10 to 12 feet wide. The distance from the east edge of the cattle gap to the skid marks on the east portion of the pavement where the accident occurred is 34 feet.
On the afternoon of the accident Hill was traveling south on Rainey Road for the purpose of making a delivery for his employer and co-defendant, Southwest Drug Stores of Mississippi, Inc. He had never been on Rainey Road before and was proceeding at approximately 30 miles an hour in a 1962 Oldsmobile station wagon owned by his employer. He observed the sign warning of the dangerous exit  500 feet  and reduced his speed so that he was traveling at 25 or 26 miles an hour when he went over the crest of the hill. At this time he was not aware that the sign referred to the exit of the Lazy-Three Ranch or that the dangerous exit was on the right side of the road. He did look for the exit, however, and, according to his testimony, the first thing he saw was a girl on a bicycle 5 to 8 feet behind or west of the cattle gap, followed closely by two boys on horses. He estimated that he was 100 feet from the exit at the time he saw the child on the bicycle, and that she was riding very swiftly in an easterly direction toward the exit onto Rainey Road. At that point Hill began applying his brakes though he did not sound his horn. His testimony in regard thereto is: "I did not slam my brakes at that point, no, I started applying my brakes, I started slowing down." Later he explained the accident in this manner:
First upon seeing her, I looked and applied my brakes, just a short period of time, and then I looked  took a further glance and saw two boys on horseback and they were riding rather fast. I had the impression that they were chasing her; and she was riding very fast on her bicycle also; and I looked again at her. I could see that she did not take any note of me. She did not seem to look when she came out on to the road itself either way to see if any cars were coming; and so I knew again that I had better try to avoid hitting her. I applied my brakes and turned and swerved the car over away from her into the left lane to avoid hitting her. She came on out on to the middle of the road itself. And like I said, she did not look. She did not seem to see me. She looked in my direction, and even upon seeing me she did not change her direction at all, she just went straight on across the road and there was no driveway or anything that she could be going into, she just came out from the driveway. And the next thing  and like I said, it happened so fast, and the next thing when the left front bumper of my car hit the rear of her bicycle, the rear fender. I did not hit her bicycle.
Each of the assignments of error focuses upon the alleged inadequacy of damages. As recognized by several decisions of this Court the amount of verdicts, whether adequate or inadequate, is one of the most troublesome questions with which the courts have to struggle. Brown & Root, Inc. v. Continental Southern Lines, 228 Miss. 15, 87 So.2d 257 (1956) and Peerless Supply Co. v. Jeter, 218 Miss. 61, 65 So.2d 240 (1953). We are aware that the assessment of damages is primarily within the province of the jury. Mississippi Code 1942 Annotated section 1453 (1956), Actions for Injuries Producing Death, is in part as follows:
In such action the party or parties suing shall recover such damages as the jury may determine to be just, taking into consideration all the damages of every kind to the decedent and all damages of every kind to any and all parties interested in the suit.
*77 We must review the evidence in this case, its facts and surrounding circumstances as did the jury, without injecting our own thoughts as to what is adequate or inadequate. This does not mean, however, that the Court is without power to act when it appears from the evidence that the amount of the verdict bears no reasonable relation to the loss suffered and manifests a miscarriage of justice. Boroughs v. Oliver, 226 Miss. 609, 85 So.2d 191 (1956). See also Vaughan v. Bollis, 221 Miss. 589, 595, 73 So.2d 160, 162 (1954) where we stated: "The verdict of the jury will not be disturbed on appeal when a mere preponderance of the evidence is against it, but will be set aside when it is palpably against the weight of the evidence."
In evaluating the evidence we must first consider the question of contributory negligence. The decedent was a twelve-year-old child and was presumptively incapable of exercising mature judgment and discretion. We stated in Moak v. Black, 230 Miss. 337, 351, 92 So.2d 845, 852 (1957):
The rule is well settled by the decisions of this Court that a minor child between the ages of 7 and 14 years is prima facie presumed not to be possessed of sufficient discretion to make him guilty of contributory negligence in failing to exercise due care for his own safety.
See also Westbrook v. Mobile & O.R. Co., 66 Miss. 560, 6 So. 321 (1889).
The defendants below neither pled, nor offered any proof of, nor requested an instruction on contributory negligence. The plaintiffs, on the other hand, obtained an instruction to the effect that the decedent did not have the mental capacity, intelligence and discretion to be negligent in riding her bicycle from the driveway of the ranch onto Rainey Road and could not be held responsible for her actions as would an adult or a child over 14 years of age. The defendants have not cross-appealed from this instruction. Therefore, we will assume that the issue of contributory negligence is settled, and will consider the damages, as the jury was instructed to do, solely upon the negligence of the defendants. The defendants cite Shows v. City of Hattiesburg, 231 Miss. 648, 97 So.2d 366 (1957) and Vaughan v. Bollis, 221 Miss. 589, 595, 73 So.2d 160, 162 (1954) where we stated:
It is for the jury to decide whether it will diminish the damages in proportion to the amount of negligence attributable to the plaintiff when under all the testimony and circumstances thereby shown, a part of the negligence contributing to plaintiff's injuries was attributable to his own negligence, even if no instruction to this effect is requested by either party. (Emphasis supplied.)
However, these cases are readily distinguishable from the case at bar and so are not controlling. The question in those cases was whether the jury could consider the contributory negligence of a child when no instruction was obtained on the point, whereas here the question is whether the jury has the right to disregard the court's instruction on the presumptive incapacity of a twelve-year-old child to be negligent. Thus our decision does no violence to either Shows or Vaughan.
We have carefully considered the record and under the facts and circumstances of this case we are of the opinion that the jury verdict in the sum of $5,000 is so grossly inadequate and disproportionate to the loss suffered as to require the cause to be reversed and remanded for a new trial on the question of damages alone, liability being established against the defendants. Since the case must be retried on the question of the damages resulting from the negligence of the defendants, which will necessitate the introduction of proof as to the facts, we point out that the instruction obtained by the plaintiffs on the question of contributory negligence of *78 the decedent was proper under the facts in this record and the court was correct in granting the same.
The case is therefore reversed and remanded for a new trial upon the issue of damages only.
Reversed and remanded.
GILLESPIE, P.J., and RODGERS, INZER, and ROBERTSON, JJ., concur.