420 So.2d 1063 (1982)
Mrs. Rogene Winborne DAVIS, Admrx. of Estate of Terry David Davis, Deceased
v.
Nathaniel WATERMAN.
No. 53449.
Supreme Court of Mississippi.
October 13, 1982.
Rehearing Denied November 10, 1982.
*1064 William F. Riley, Natchez, Donald Patterson, Brookhaven, for appellant.
Daniel, Coker, Horton & Bell, Curtis E. Coker, J. Wyatt Hazard, Jackson, for appellee.
Before SUGG, P.J., BROOM and BOWLING, JJ.
BROOM, Justice, for the Court:
Wrongful death action growing out of an intersectional vehicular collision is the nature of this suit, tried in the Circuit Court of Lincoln County, the Honorable Joe N. Pigott, circuit judge, presiding. The appellant (plaintiff herein) Mrs. Rogene Winborne Davis, as Administratrix of the Estate of Terry David Davis, Deceased, brought this action on account of the death of Terry, her son, born February 14, 1966, and killed September 30, 1979, in the collision of his motorbike with a car driven by Nathaniel Waterman (defendant herein). The jury found for the defendant, and we affirm.
On appeal, the plaintiff argues: (1) the court erred in allowing the jury to consider the question of contributory negligence on the part of the plaintiff's decedent, (2) the jury verdict was not supported by adequate evidence and was not responsive to the court's instructions, (3) the court erred in failing to grant the plaintiff's requested *1065 peremptory instruction, and (4) the court erred in refusing to grant plaintiff's instruction P-5 on the law of contributory negligence.
Terry David Davis (Terry herein), wearing no helmet, was driving a motorbike on September 30, 1979, and stopped at an intersection while headed east on Arlington Road in Lincoln County, where it intersects U.S. Highway 51 in the town of Bogue Chitto. The accident occurred about midafternoon on a fair day, when the defendant's (Waterman's) car apparently struck the motorbike as Waterman was headed south. Terry died on the scene after pulling out into the intersection in front of Waterman. The intersection was in a builtup area near residences, stores, a bank, school and church. Other facts will be stated as pertinent within this opinion.
DID THE TRIAL JUDGE ERR IN ALLOWING THE JURY TO CONSIDER THE QUESTION OF CONTRIBUTORY NEGLIGENCE ON THE PART OF THIRTEEN-AND-ONE-HALF-YEAR-OLD TERRY, THE DECEDENT? General law in this state has been that a child between the ages of seven and fourteen is presumed incapable of contributory negligence in failing to exercise due care for his own safety. Moak v. Black, 230 Miss. 337, 92 So.2d 845 (1957). Both litigants recognize that the presumption is rebuttable, but the plaintiff argues that "the record is void of any evidence which would in any way rebut this presumption. No proof, in fact, was offered by the defendant to rebut said presumption." Defendant's argument is that upon this record, pursuant to the rule enunciated in Johnson v. Howell, 213 Miss. 195, 56 So.2d 491 (1952), and upon the testimony introduced at trial, the presumption was rebutted, therefore making it proper for the question of contributory negligence to be submitted to the jury. In Johnson, the jury was instructed:
[T]hat if you believe from the evidence that the plaintiff, Bobby Howell, from his age, intelligence, knowledge and experience has sufficient discretion to be charged with negligence and if you further believe from the evidence that the plaintiff, Bobby Howell, was guilty of negligence which contributed to the injury, then the court instructs you that any damages which the plaintiff has sustained shall be diminished in proportion to the amount of negligence attributable to the plaintiff.
Id., at 198, 56 So.2d at 491-92, (emphasis added).
As to whether the contributory negligence issue was properly submitted to the jury, the following is excerpted from the testimony of Deputy Sheriff Winborne, who testified (on cross-examination) as follows, when placed on the stand by the plaintiff:
Q Well, you knew Terry very well and you had confidence in him knowing about the rules of the road, did you not?
A I've told him many a time to always stop at stop signs, never cross the highway when a person is approaching it with his signal lights on because they're mechanical. It could very easily be on and they not even know their signal lights was on. Always wait until the car made the attempt to make its turn, even though you knew its signal light was on before you crossed, because that signal light could be hung up and that man might not even know that light's flashing, and he might have no intention of turning. And you go ahead and take it for granted the man's going to turn off and cross in front of him and he'll run over you, I said, "Always wait `til you know that the man is done in the position of turning off before you pull out."
Q In other words, what you're telling us is that even just you telling him, he was well instructed in the rules of the road and how to handle himself with traffic?
A I would say so.
Testimony in the record established that Terry had been riding a motorbike for two years and was a good rider. Further testimony was that Terry knew he was supposed *1066 to stop at the stop sign, was familiar with traffic, and knew he should look both ways before entering the highway. He was a seventh grader, about thirteen-and-a-half years old. It is true that none of the testimony literally described Terry as having "exceptional capacity" for his age, but we think the totality of the evidence was sufficient to justify the issue of his contributory negligence going to the jury. Clearly the evidence showed that he had capacity sufficient to know and appreciate the peril of his situation. Howell v. Illinois Central Railroad Co., 75 Miss. 242, 21 So. 746 (1897).
Regardless of the fact that the magic words "exceptional capacity" were not used in describing Terry's mentality, we think the time has come when minors who operate a self-propelled vehicle on a highway must be held to the same standard of care as an adult. It is common knowledge that many children now operate self-propelled vehicles upon public streets and highways, and such vehicles in their hands are equally as dangerous as they would be if operated by adults. The proper rule, which we now adopt, is that stated in Gunnells v. Dethrage, 366 So.2d 1104 (Ala. 1979), wherein the Alabama court held:
The overwhelming majority of jurisdictions hold minors to an adult standard in determining whether their conduct while engaging in an adult activity is negligent. [citations omitted]. The prevailing view is that a minor who enters upon an adult activity such as the operation of a motor vehicle must exercise a commensurate degree of responsibility. Motor vehicles are dangerous instrumentalities and public safety demands that all who operate them exercise the same degree of care and competency. We adopt this view.
Id., at 1105.
To the same effect is the following language taken from Prosser, The Law of Torts, § 32 (4th ed. 1071):
[W]henever a child, whether as plaintiff or as defendant, engages in an activity which is normally one for adults only, such as driving an automobile or flying an airplane, the public interest and the public safety require that any consequences due to his own incapacity shall fall upon him rather than the innocent victim, and that he must be held to the adult standard, without any allowance for his age. This position has been rapidly gaining ground in recent years.
Id., at 156-57.
Murchison v. Sykes, 223 Miss. 754, 78 So.2d 888 (1955), dealt with facts of an accident in which a nine-year-old child drove his bicycle from behind a blind corner into an intersection. There we stated:
[S]ince the traffic laws of the State and the traffic ordinances of this municipality make no exception such as to exempt a child from their provisions, the instruction here complained of correctly states the law on behalf of the defendants. Defendants were not required to obtain instructions upon the plaintiff's theory of the case wherein the instruction is complained of as being incomplete.
Id., at 759, 78 So.2d at 890.
Burlingame v. Southwest Drug Stores of Mississippi, Inc., 203 So.2d 74 (Miss. 1967), was a case in which a 12-year-old plaintiff rode her bicycle into the street and was struck by the defendant's car. We stated that it was within the province of the jury to consider the infant plaintiff's contributory negligence even though such negligence was neither pleaded nor evidence put forth to show an exceptional capacity or judgment, unless the jury was specifically instructed that such exceptional capacity, intelligence and judgment did not exist.
The defendant argues that plaintiff should not now be heard to object to the contributory negligence issue going to the jury because, at her request, jury instruction P-10 was given in the following language:
The Court instructs the jury that if you find from a preponderance of the evidence in this case that the defendant was guilty of negligence which proximately caused or contributed to the accident, and if you further find from a preponderance of the evidence in this case that Terry *1067 David Davis was guilty of negligence which proximately caused or contributed to the accident in question, then it will be your sworn duty to determine the sum of money which will fairly and adequately compensate the plaintiff for the death of Terry David Davis, and then reduce this sum by the percentage of Terry David Davis' negligence if any in order to arrive at your verdict.
Responding to this argument, plaintiff points out that, because the court had refused her instructions P-3 and P-18, she was forced to ask for instruction P-10. We find it unnecessary to deal further with these arguments except as follows: On the record, Terry was "well instructed" by his uncle, Deputy Sheriff Winborne, as to the rules of the road pertaining to the operation of his motorbike. Further, we now adopt the rule that anyone operating any motor-propelled vehicle upon a public street or highway must follow the same "rules of the road" and exercise the same standard of care as adults. In stating this rule, we are not unmindful of earlier decisions which, in some respects, are in conflict with the rule just set forth.[1] To the extent that previous cases are in conflict with the rule set forth above, they are now overruled, but we emphasize that the rule adopted in this opinion applies only to motor-propelled vehicles. Future cases involving contributory negligence of children under fourteen years of age will be decided upon appropriately briefed arguments and facts as such subsequent cases appear on our docket.
WAS THE JURY VERDICT CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE? Our analysis of the record leads us to conclude that the verdict was adequately supported by the evidence.
Defendant Waterman saw Terry stopping on his motorcycle at the stop sign as Terry faced east on Arlington Road. Being engaged in the operation of his car and Terry driving the motorcycle, Waterman stated that he could not determine Terry's age or size. Plaintiff's witness, Vicki Reed, passed Terry just before the accident and she determined that he was a young boy but her testimony was that she had known him for seven or eight years and recognized him. Following just behind defendant Waterman was Mr. Brown, who testified about Terry as follows: "He looked pretty big. He looked like an adult to me."
No testimony established that Waterman was driving his vehicle at any excessive or unlawful rate of speed. Witness Brown was the only eyewitness who actually saw the tragic accident, except Waterman and Waterman's wife. On cross-examination, Brown gave the following testimony:
Q And you heard [the defendant's tires] squeal for a pretty good piece, didn't you?
A No.
Q Well, you heard them squeal for several seconds, did you not?
A I wouldn't say several seconds, but I just heard them, you know, shoos, like that.
Q All right. And he went into a skid, did he not?
A No. He  looked like it was controlled to me  looked like, you know, he just hit the brakes and just tried to swerve to the left.
*1068 Other testimony established that defendant Waterman honked his horn. Upon the totality of the testimony, we cannot agree that the jury verdict was against the weight of the evidence. It follows that the lower court did not err in refusing to grant the plaintiff a peremptory instruction on liability.
DID THE COURT ERR IN REFUSING TO GRANT PLAINTIFF'S INSTRUCTION P-5? P-5 is as follows:
Your verdict in this case must be in favor of the plaintiff awarding her such sum by way of damages as you find should be fixed based upon the evidence and the instructions of the Court in that regard if you find from a preponderance of the evidence that the defendant was guilty of some negligence, no matter how slight, which proximately caused or proximately contributed to causing the collision.
Instruction P-10 was granted to the plaintiff, and it provided:
The Court instructs the jury that if you find from a preponderance of the evidence in this case that the defendant was guilty of negligence which proximately caused or contributed to the accident, and if you further find from a preponderance of the evidence in this case that Terry David Davis was guilty of negligence which proximately caused or contributed to the accident in question, then it will be your sworn duty to determine the sum of money which will fairly and adequately compensate the plaintiff for the death of Terry David Davis, and then reduce this sum by the percentage of Terry David Davis' negligence if any in order to arrive at your verdict.
The substance of the two instructions quoted above are quite similar, and they differ mainly as to wording rather than as to substance. P-5, as worded in the first four lines, is very close to being peremptory, and quite conceivably could be interpreted by a jury as being peremptory. P-10, together with the other instructions given, furnished adequate and proper guidance to the jury.
Our conclusion is that all issues growing out of the traffic accident were submitted to a jury which rendered a fair verdict. No reversible error has been established, and therefore affirmance is required.
This case was considered by a conference of the judges en banc.
AFFIRMED.
SUGG and WALKER, P.JJ., and ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE and PRATHER, JJ., concur.
PATTERSON, C.J., takes no part.
NOTES
[1] Collected here are prior cases which discussed the issue of contributory negligence of children under fourteen years of age. Although they do not specifically involve motor-propelled vehicles on public thoroughfares, they are listed in order to show something of the history of our jurisprudence as related to contributory negligence of young children. Westbrook v. Mobile and Ohio R. Co., 66 Miss. 560, 6 So. 321 (1889); City of Vicksburg v. McLain, 67 Miss. 4, 6 So. 774 (1889); Potera v. City of Brookhaven, 95 Miss. 774, 49 So. 617 (1909); Pascagoula Street, Ry. & Power Co. v. Brondum, 96 Miss. 28, 50 So. 97 (1909); City of Pass Christian v. Fernandez, 100 Miss. 76, 56 So. 329 (1911); Hines v. Moore, 124 Miss. 500, 87 So. 1 (1920); Gordon v. Lee, 208 Miss. 21, 43 So.2d 665 (1949); Johnson v. Howell, 213 Miss. 195, 56 So.2d 491 (1951); Belk v. Rosamond, 213 Miss. 633, 57 So.2d 461 (1952); McMinn v. Lilly, 215 Miss. 193, 60 So.2d 603 (1952); Morris v. Boleware, 228 Miss. 139, 87 So.2d 246 (1956); Moak v. Black, 230 Miss. 337, 92 So.2d 845 (1957); Agregaard v. Duncan, 252 Miss. 454, 173 So.2d 416 (1965); Burlingame v. Southwest Drug Stores of Miss., Inc., 203 So.2d 74 (Miss. 1967).