This is a wrongful death action by Willie Lee Steele, mother and Administratrix of the Estate of Tremayne Steele, deceased, on appeal to this Court from the Circuit Court of Warren County, Mississippi. The trial commenced on November 26, 1990. At the conclusion of the appellant's case in chief, a directed verdict was granted Holiday Inns, Inc. On December 4, 1990, the jury returned a verdict in favor of the remaining appellees, Inn of Vicksburg, Inc., and Joe Pitzer, and judgment in accordance with the verdict was rendered.
Appellant filed a Motion for Judgment Notwithstanding the verdict or in the Alternative for a New Trial.
Feeling aggrieved, Steele appeals alleging five assignments of error. Having carefully examined and considered the issues presented, we find all but one issue devoid of merit and not worthy of discussion. The trial judge correctly granted a directed verdict in favor of Holiday Inns Inc. We find that the trial judge erred in the refusal and granting of certain jury instructions. Appellant's one issue of merit follows:
 WHETHER THE TRIAL COURT ERRED IN REFUSING INSTRUCTION P-16 AND IN GIVING INSTRUCTIONS D-19 AND D-7A, AS TO WHETHER THE DECEASED MINOR COULD BE FOUND GUILTY OF CONTRIBUTORY NEGLIGENCE.
 FACTS
On April 25, 1987, 13-year-old Tremayne Steele was pulled from the bottom of the indoor swimming pool at the Holiday Inn in Vicksburg, Mississippi. All attempts to resuscitate Tremayne were unsuccessful. There was little variation in the testimony of witnesses who were present at the pool in relating the facts and circumstances to the trial court.
Tremayne was an average, typical seventh grader at Clinton Junior High School. His teacher, Patricia Seagrove, testified that Tremayne made "B average grades, like B's and C's" and was a "nice young man" who was "pretty reliable."
Willie Lee Steele, mother of the decedent, characterized Tremayne as an average child for his age. She testified she had known Jay McKee, a coach of youth soccer and baseball teams, for about one month prior to her son's death. Mrs. Steele stated she gave permission for Tremayne to accompany Jay McKee and his son to Vicksburg for a soccer match. She was aware that Tremayne would be going swimming at the motel pool while in Vicksburg. She told the trial court that Tremayne had only been given three or four swimming lessons, but had never been in water over 4 feet deep, and had been told not to get into deep water. Mrs. Steele also told the jury that if she had known that McKee was not going to stay by the pool, she would still have let Tremayne go with McKee, because she knew that "he couldn't watch him every minute."
Jay McKee testified that he met Tremayne through tryouts for the youth baseball team which he coached. McKee described Tremayne as a "good kid with a great attitude" who was respectful of his elders.
At the motel, McKee testified that he sat at poolside watching Tremayne and his own son, Patrick, swimming and playing. At one point when he didn't see either of them anymore, he went searching, first looking into the pool. McKee found his son running the halls and put him to bed, but failed to find Tremayne. McKee testified that at first he thought he could see the bottom of the pool. However, after the incident, once the pool lights were turned on, there was a noticeable large white cloud in the water and the middle was opaque. McKee stated he did not notice any rope across the pool or any underwater lights on prior to the incident. He estimated there were 20 kids in the pool and 50 to 60 persons around the pool area when the kids were swimming. He testified that if the water had been clear and he could have seen Tremayne at the bottom of the pool, he would have tried to rescue him.
McKee testified on cross-examination that if Tremayne's parents had told him that Tremayne was a poor swimmer or to restrict him in the pool, he would not have let him swim at all. McKee stated he never saw Tremayne in the deep end of the pool. He *Page 596 
characterized Tremayne as "extremely bright and very well behaved." McKee estimated that about one hour elapsed between the last time he saw Tremayne and the time he was pulled from the pool.
Gerald Abraham, a motel guest, testified that upon arrival at the motel on the afternoon of Friday, April 24, 1990, he noticed the indoor pool water to be cloudy, that there were no lights on under the water, and that there was no rope separating the shallow from the deep end. He testified that the pool was in the same condition on April 25th as the day before. Abraham did not recall seeing signs warning "No Lifeguard, Swim at Your Own Risk" on either date. On cross-examination he admitted the signs could have been there and he failed to notice them. Abraham testified he did notice Tremayne in the pool because Tremayne was the only African-American child in the water.
Another motel guest, Terry Malone, testified the water was "dark and mucky colored" at approximately four o'clock the afternoon of April 25th, which was immediately prior to the incident. He noticed Tremayne and commented that "you don't see kids at that age usually . . . have that swimming ability." He stated he had taught swimming in college and was "pretty impressed." He testified that he was present when the body was discovered, and that a little boy approached him and said, "something's down there," to which he responded, "Well, get it." Malone testified "when the boy went down it was dark down there. He came up with a black hand and we grabbed it and pulled it out." Malone told the court it was impossible to see more than one to one and a half feet beneath the pool's surface. He stated that if you dropped a nickel into the water, after about a foot and a half, the nickel disappeared and was no longer visible. On cross examination, Malone stated that upon arrival he had commented that the pool water was cloudy. On redirect, Malone testified that anybody, including himself, would have rescued Tremayne if they could have seen him at the bottom of the pool, even if Jay McKee were not present.
Mrs. Linda Marbury, a motel guest, testified that she was at poolside on the date of the incident. She, too, noticed the pool water was "dark looking." She stated she did not see a rope across the pool, did not recall seeing warning signs posted, but did recall seeing an underwater light in the pool. She never saw any Holiday Inn personnel around the pool until after the body was found.
Roy Goodwin, maintenance chief for Vicksburg Holiday Inn at the time of the drowning, stated his duties included the maintenance of both the indoor and the outdoor swimming pools. He stated he had no experience with swimming pool maintenance prior to being hired at the motel. Goodwin testified that he never thought about keeping the water clear so that people could be seen and rescued. He explained that an electronic system, as well as various chemicals, were used on the indoor pool to purify the water and control the ph balance. He stated that an incorrect ph balance can affect water clarity and create cloudiness.
Goodwin stated that a rope was not permanently attached to the pool sides because swimmers would stand on it and tear the sides out of the pool. He told the court it was his duty to keep the rope across the pool. Goodwin testified he took pool readings after the drowning which showed normal chemical levels, but chlorine was added anyway, since a child had drowned.
Richard Wilbourn, president and a stockholder of the Inn of Vicksburg, testified that "they [Holiday Inns, Inc.] leave us to run our own show." He also told the court that the management was under the direction of Mr. Joe Pitzer, general manager of the Inn of Vicksburg.
Joe Pitzer testified that it was his decision to purchase the electronic system to treat the indoor pool, mainly for the purpose of reducing the amount of chlorine necessary to treat the water. He stated that it was someone's job to test the pool water each day before the pool opened at 9:00 a.m. He stated that he noticed the pool water was cloudy the evening before the drowning, and asked maintenance personnel if tests on the water indicated it to be in balance, which was answered affirmatively. Pitzer stated he was relying on the filtration to clear up the water. He *Page 597 
stated he saw the rope across the pool as late as 3 p.m. on the afternoon of the drowning. Pitzer admitted he had the pool closed following the drowning, but stated this was not due to a concern about safety, but rather in order to sanitize the water. Pitzer testified that he would close the pool if he considered the water to be unsanitary, but not necessarily if he noticed it to be so cloudy that the bottom of the deep end could not be seen.
Roy Flora, Director of Business Relations for Holiday Inns, Inc., testified that a franchisee agrees in its licensing agreement to comply with the "standards manual" applicable at that time. He stated that the day-to-day responsibility for maintaining a hotel's swimming pool belonged to the licensee. He stated further that Holiday Inns, Inc. periodically inspected every hotel, including the swimming pools. Flora stated pool water clarity was one item of inspection.
The appellant rested her case and the court granted a directed verdict in favor of the defendant, Holiday Inns, Inc.
The appellees called Dr. Frank McPherson, a general surgeon. He testified he had reviewed the autopsy report, death certificate on Tremayne and literature on drowning. McPherson explained that hyperventilation is "breathing too hard," and has the effect of not giving the brain enough oxygen. He stated that in the game Tremayne was participating in while swimming, "Fish Out of Water," it would be possible to become disoriented due to a lack of oxygen and to ultimately lose consciousness. He stated if this occurred, and a breath was taken, then the person could aspirate, or breathe in water and drown. He further stated that he did not disagree with the statement that Tremayne died because he was under water too long.
Next, the appellees offered testimony from Edward Gibbs, an employee of the Inn of Vicksburg, whose duties included caring for the swimming pools. He stated that he tested the pool water daily to make sure sufficient chemicals were in the pool. He explained that water can have normal readings and be in balance, but still be cloudy for other reasons, such as a dirty filter, particles in the water being too small to be caught, and/or a large group of swimmers in the water. When questioned about the rope, he stated it was a "constant thing to have to replace the rope after kids would take it down." Gibbs testified that after the drowning, Joe Goodwin added chlorine, to "try to burn off any dirt, or the salt from a person's body," to clear up the water.
The appellees rested and the jury returned a verdict in favor of the remaining appellees, Inn of Vicksburg, Inc. and Joe Pitzer.
 DISCUSSION OF LAW WHETHER THE TRIAL COURT ERRED IN REFUSING INSTRUCTION P-16 AND IN GIVING INSTRUCTIONS D-19 AND D-7A, AS TO WHETHER THE DECEASED MINOR COULD BE FOUND GUILTY OF CONTRIBUTORY NEGLIGENCE.
The appellant requested that the trial court grant instruction P-16, which read as follows:
 The Court instructs the jury to find that Tremayne Steele was not guilty of any contributory negligence.
The appellant argues since Tremayne was a 13-year-old minor at the time of his death, that the defense had the burden of establishing him to be possessed of exceptional capacity and judgment so as to remove him from that class of minors presumptively held incapable of exercising discretion. Appellant submits that the defense failed to meet this burden as the evidence indicated that Tremayne was an "average child." Thus, appellant argues the lower court erred in permitting the jury to consider whether Tremayne was contributorily negligent.
As support for this argument, appellant cites Johnson v.Howell, 213 Miss. 195, 56 So.2d 491 (1952). In that case, the eight-year-old appellee was injured when struck by appellant's automobile at a school cross walk. The appellant was granted an instruction at trial which allowed the jury to reduce the amount of appellant/appellee's damages in proportion to the amount of negligence attributable to him, if appellant was found to be contributorily negligent. The instruction *Page 598 
was similar to Instruction D-7A granted in the case at bar. Appellee was granted a second trial due to the court's error in granting the aforementioned instruction in the first trial.
On appeal, this Court stated:
 As a general proposition contributory negligence is an affirmative defense and the burden of proving it is upon the defendant. (cites omitted). The burden is even greater, however, in the case of a minor child between the ages of seven and fourteen years. Such a child is prima facie presumed not to be possessed of a sufficient discretion to make him guilty of contributory negligence in failing to exercise due care for his own safety. This presumption may be overcome by proof, in which event it becomes a question of fact for the jury, but such proof must show the exceptional capacity of the child and his possession of the faculty of judgment in such degree as removes him from the class of infants presumptively held incapable of exercising discretion. Potera v. City of Brookhaven, 95 Miss. 774, 49 So. 617; Hines v. Moore, 124 Miss. 500, 87 So. 1; City of Vicksburg v. McLain, 67 Miss. 4, 6 So. 774.
The Court in Johnson, 213 Miss. at 198, 56 So.2d at 492, noted that the record showed no proof of any exceptional capacity of the eight-year-old child, and affirmed the refusal of the second trial court to grant the contributory negligence instruction.
In answer to appellant's argument, appellees correctly contend that Johnson indicates that the presumption that a child under age 14 is incapable of contributory negligence is a rebuttable one. Further, appellees submit that Johnson "does not require that the child be shown to be a genius or a child prodigy, but merely that he possess the faculty of judgment in such a degree as removes him from the class of infants held incapable of exercising discretion." Appellees contend that the evidence presented did not rise to the level of making a jury issue on contributory negligence as to Tremayne Steele. The record indicates the following:
Tremayne was thirteen years and four months old at the time of the accident. Tremayne's school teacher testified that Tremayne was a seventh grader who made "B average grades, like B's and C's." She further described Tremayne as a "nice young man" and stated "he was pretty reliable."
It is the evidence regarding Tremayne's swimming ability and experience which is most troublesome. Tremayne's mother testified that Tremayne had gone swimming on trips with his Bible class in 1986 and that her boyfriend, Mr. Miller, had given Tremayne three or four swimming lessons in 1987. However, she stated that Tremayne had never been in "deeper than four feet of water" and that she had instructed him to not get in deep water. Finally, Ms. Steele characterized her son as "an average child for his age." Jay McKee testified that he met Tremayne and had known him for one month before the drowning. In his opinion, Tremayne was "extremely bright and very well behaved." However, McKee admitted he never asked Tremayne's mother or Mr. Miller about his swimming ability. McKee stated that he asked Tremayne himself if he could swim.
McKee testified, in reference to statements made during an earlier deposition, that he may have been mistaken when he stated Tremayne had been in the pool at McKee's apartment on four (4) occasions prior to the accident. McKee testified that "kids would come by all the time," but the fact that he had only known Tremayne from mid-March to mid-April made him believe that Tremayne would not have been swimming outside during those months. As to swimming at the Holiday Inn, McKee stated he observed Tremayne playing the game "Fish Out of Water" in the shallow end of the pool, but that he never observed Tremayne in the deep end. McKee admitted that he had given his own son instructions to stay in the shallow end of the pool, but had not given any instructions to Tremayne.
Terry Malone testified that he had occasion to watch Tremayne swimming, and that when Tremayne "first got in the pool, I noticed that he swam the complete length of the pool and turned around and went back *Page 599 
and I commented to somebody sitting beside me that you . . . don't see kids at that age usually swim that, have that swimming ability. . . ."
It seems clear that neither Tremayne's ability to swim nor his experience in swimming pools could be called substantial, certainly not exceptional. The bulk of the testimony indicates Tremayne had received few swimming lessons and no instructions in regard to swimming at the hotel pool. The evidence simply does not rise to the standard of exceptional capacity required for the appellees to overcome their burden of rebutting the presumption against contributory negligence on the child's part.
The appellees further cite Davis v. Waterman, 420 So.2d 1063
(Miss. 1982), a case involving a thirteen-year-old child who was killed while riding a motorbike which was in a collision with an automobile driven by the defendant. There, the appellant argued on appeal that it was improper for the issue of contributory negligence of the child to be considered by the jury. Appellant argued that there was no proof indicating that the presumption against contributory negligence of a minor had been rebutted. The record showed that the minor had been riding a motorbike for two years and was a good rider; that he knew to stop at a stop sign, and was familiar with traffic; that he knew he should look both ways before entering the highway; and that he was a seventh grader, about thirteen-and-a-half years old. Further, testimony indicated the child was "well instructed" by his uncle, a deputy sheriff, as to the rules of the road pertaining to the operation of his motorbike.
This Court stated:
 It is true that none of the testimony literally described Terry as having `exceptional capacity' for his age, but we think the totality of the evidence was sufficient to justify the issue of his contributory negligence going to the jury. Clearly the evidence showed that he had capacity sufficient to know and appreciate the peril of his situation.
420 So.2d at 1066.
It is important to note that the Davis Court further stated, "Regardless of the fact that the magic words `exceptional capacity' were not used in describing Terry's mentality, we think the time has come when minors who operate a self-propelled vehicle on a highway must be held to the same standard of care as an adult." Id. The Court adopted the rule, only to apply tominors operating motor-propelled vehicles, that such minors must exercise the same standard of care as adults. The Court concluded that it was thus not error for the issue of contributory negligence to go to the jury.
In the case of Glorioso v. YMCA of Jackson, 556 So.2d 293
(Miss. 1989), this Court stated the following:
 The law with respect to contributory negligence on the part of minors is clear. A minor child between the ages of seven and fourteen years is prima facie presumed not to be possessed of sufficient discretion to make him guilty of contributory negligence, and hence the defendant who raises such defense has a greater burden to prove the same than in a case where the appellant is not a minor child. (cites omitted). Such a presumption, however, is rebuttable by showing exceptional capacity. (cites omitted).
Glorioso involved a nine-year-old boy who was crushed to death by a rolling light pole upon which he and other children, and their camp counselor had been playing. In granting a new trial, this Court held that the failure to grant an instruction that the minor child was presumed by law to be incapable of contributory negligence was "misleading to the jury." 556 So.2d at 295. The Court further stated "we agree with the appellants that the jury could have easily concluded, in the absence of the requested instruction, that Seth Glorioso was negligent in playing on the log and in jumping the wrong way when it began to roll and was responsible for his own death. This conclusion is erroneous and contrary to the law of this state." Id.
The court reached a similar result in Burlingame v. SouthwestDrug Stores of Miss., Inc., 203 So.2d 74 (Miss. 1967), where a twelve-year-old girl was killed by an automobile driven by defendant's employee. The girl was described by her teacher as being "a *Page 600 
good, average sixth-grade student." The record further indicated she sang in the church choir, was an "obedient and diligent worker in the home" and "loved horseback riding." She also worked at a ranch in return for being allowed to ride and exercise horses kept there. 203 So.2d at 75. The appellant obtained an instruction similar to P-16 requested by appellant in our case.
This Court first considered that "the decedent was a twelve year old child and was presumptively incapable of exercising mature judgment and discretion." Burlingame, 203 So.2d at 77. The Court found the instruction stating the presumption against a minor's contributory negligence was properly granted under the stated facts.
It is rather obvious that this Court has distinguished children on motorized vehicles and "darting child" cases from the casesub judice. Justice Robertson, writing for the Court in a recent darting child case, Splain v. Hines, 609 So.2d 1234, 1242 (Miss. 1992), emphasized that "because the darting child phenomenon is one we can appreciate and because practically every parent beats it into his or her child he or she should be careful entering streets, the presumption instruction was not necessary."
Splain, however, was a decision with strong dissenting views. Justice Pittman disagreed with the majority's attempt to distinguish the facts of Splain, where the child ran out into a street, from those of Glorioso. The dissent made clear that inGlorioso, "[t]his Court did not hold that a minor is presumed not to be contributorily negligent only in `unusual cases.'"Id. at 1243. Justice Pittman further disagreed that the facts of Splain rose to the level of Davis where it was held that a minor operating a motor propelled vehicle was not entitled to the instruction. The dissent concluded that, under the facts ofSplain, the minor child was clearly entitled to an instruction stating the presumption against contributory negligence:
 Splain was entitled to the instruction. Without P-14, the jury was not fully informed as to the applicable law. "All instructions taken as a whole must fairly announce the applicable primary rules of law." Glorioso, 556 So.2d at 295. "The absence of the requested instruction was misleading to the jury." Id. The jury cannot be expected to know the intricacies of the law — that is the purpose of jury instructions.
Id.
Justices Sullivan and McRae joined this dissent. Justice McRae's separate dissent in Splain, also joined by Justice Sullivan, appropriately states:
 The majority summarily dismisses Glorioso as "an unusual case, likely beyond the ken and experience of the average juror." I am not sure what that means, but the fact remains that the principles set out in Glorioso are directly applicable here. Twelve-year-old Splain ran out into the path of Hines' automobile, presumably without looking to see if a car was coming. It would be a rare juror indeed who would fail to note that Splain's actions directly contributed to his injury. How can we know that the jury did not find for the defendant on grounds that Splain brought misfortune upon himself? We cannot assume that the jury was familiar with the presumption against contributory negligence in cases involving seven to fourteen year-old minors. As in Glorioso, "[t]he absence of the requested instruction was misleading to the jury" and should mandate reversal.
Id. at 1244.
Justice McRae concluded that "as it stands now, we have two contradictory rulings on substantially identical cases. I suppose we must wait until another day to find out which position will eventually prevail." Id. That day has come. We take this opportunity to reiterate that the law with respect to contributory negligence on the part of minors, as stated inGlorioso, Howell, and Burlingame, remains clear. However, we emphasize for purposes of clarification that the law with respect to motor-propelled vehicles only remains as was stated in Davisv. Waterman, 420 So.2d at 1067. Therein this Court adopted the rule that "anyone operating any motor-propelled vehicle upon a public street or highway must follow the same "rules of *Page 601 
the road" and exercise the same standard of care as adults."Id. (emphasis added).
Otherwise, as this Court stated nearly three decades ago inBurlingame v. Southwest Drug Stores of Miss., Inc.,203 So.2d 74 (Miss. 1967):
 The rule is well-settled by the decisions of this Court that a minor child between the ages of 7 and 14 years is prima facie presumed not to be possessed of sufficient discretion to make him guilty of contributory negligence in failing to exercise due care for his own safety.
203 So.2d at 77, citing Moak v. Black, 230 Miss. 337, 351,92 So.2d 845, 852 (1957).
In the case at bar, as in Glorioso, the failure to grant appellant's requested instruction, P-16, may have misled the jury into considering that Tremayne Steele was negligent and caused his own death. It should be noted that it was not established whether Tremayne drowned in the shallow end of the pool, where he was last seen by witnesses, or the deep end, where he was found. Indeed, it was not established in the record how the drowning occurred. Tremayne could have been underwater from 15 minutes to 1 hour, according to the testimony. The pool water had existed in a "murky" condition for at least two days, the 24th and 25th of April. Witnesses testified that you could not see past one and a half feet below the surface of the pool due to the "murky conditions". At least two tests were conducted by some of the witnesses using coins tossed into the pool. Tremayne, easily distinguishable in the water because he was the only African-American child swimming, could not be seen on the bottom of the pool. Several witnesses testified that they actually looked into the pool for Tremayne, but failed to see him. The central issue is still whether Tremayne possessed exceptional capabilities and discretion when the totality of the evidence is considered. Was it negligence for Tremayne to swim underwater given his limited swimming experience and ability? The totality of the evidence would answer that question in the negative. The record simply does not support that he was at all exceptional in accordance with our precedent case law.
During objections to jury instructions, the trial judge in the case at bar stated he would refuse Instruction P-16 in light of the case of Gordon v. C.H.C. Corporation, 236 So.2d 733 (Miss. 1970). The judge stated that although Gordon was a trespassing case "it talks about the intelligence of a child appreciating the dangers."
Indeed, Gordon was a wrongful death case against a defendant corporation which operated a "Holiday Inn" motel where a ten-year-old minor drowned. Appellant's assigned as the only error the trial court's granting of a directed verdict in favor of the defendant corporation. Appellant argued that the facts indicated the case should fall within the exception to the general rule that the attractive nuisance doctrine is not applicable to water hazards. This Court stated, "[t]he proof in this case shows that Franklin Gordon was an intelligent boy, having completed the fourth grade in school. Certainly he was not too young to appreciate the danger of water." 236 So.2d at 736. The Court held the motel owner was not liable for the death of the trespassing, ten-year-old child as the water was not an attractive nuisance to such child and where there was nothing hidden or concealed about the pool.
We find that the trial court's reliance on this case, which dealt with a swimming pool, indeed a Holiday Inn swimming pool, was nonetheless misplaced. The Court's discussion in Gordon
centered wholly around the issue of the attractive nuisance doctrine and whether it should apply to swimming pools. Gordon
did not address, nor can it properly be applied, to resolve a case focusing on the law of contributory negligence as it relates to minors.
In the case sub judice, appellees place great weight on the statement made by Terry Malone that he was impressed by Tremayne's ability to swim the length of the pool and back. However, it is apparent that this statement is the only evidence offered to show that Tremayne was possessed of the degree of exceptional capacity which is required to overcome the presumption that he was incapable of exercising due care for his own safety. Is such slim evidence sufficient? We think not. *Page 602 
The characterization of Tremayne as an "extremely bright and very well behaved" child by Jay McKee must be considered in light of the fact that McKee had known Tremayne for only one month and mainly through observing him at baseball tryouts. Further, Tremayne's mother considered him to be an "average child for his age," which fact was supported by the testimony of Tremayne's school teacher who testified that he made "average" grades. As opposed to the child in Davis, who was "well-instructed" in motorbike riding and had been engaging in that activity for two (2) years, knowing all the rules of the road, Tremayne did not have substantial experience in swimming. In particular, it was testified that he was still learning to swim, with only 3 or 4 swimming lessons under his belt, the year he died. He had never been in deep water before, and received no instructions regarding swimming in the hotel pool from his guardian, McKee. While no "magic words" are required, our case law indicates that some higher degree of mental capacity than that of the average minor must be presented in order for the appellees to overcome the stated presumption.
We hold that the totality of the evidence is insufficient to overcome the presumption that Tremayne Steele was not capable of contributory negligence. Appellant was therefore entitled to an instruction to the effect that Tremayne Steele did not have the exceptional capacity to exercise discretion and could not be held responsible for his actions as would an adult or a minor over the age of fourteen years. Appellant was entitled to instruction P-16.
In regard to the denial of a requested jury instruction this Court articulated the standard of review in Hill v. Dunaway,487 So.2d 807, 809 (Miss. 1986):
 Our rule is this: The refusal of a timely requested and correctly phrased jury instruction on a genuine issue of material fact is proper, only if the trial court — and this Court on appeal — can say, taking the evidence in the light most favorable to the party requesting the instruction, and considering all reasonable favorable inference which may be drawn from the evidence in favor of the requesting party, that no hypothetical, reasonable jury could find the facts in accordance with the theory of the requested instruction. Cf. Lee v. State, 469 So.2d 1225, 1230-31 (Miss. 1985); Fairchild v. State, 459 So.2d 793, 801 (Miss. 1984).
Further, "[a] party has a right to have jury instructions on all material issues presented in the pleadings or evidence."Glorioso, 556 So.2d at 295.
In the case at bar, Instructions D-19 and D-7A were granted. These two instructions read as follows:
 D-7A
 The Court instructs the jury that if you find from the preponderance of the evidence that Tremayne Steele was an intelligent 13 year old youngman [sic] in the 7th grade in school and was of sufficient age, discretion and intelligence to appreciate the risks, if any, of swimming in the Holiday Inn pool on the day in question, then in that event, you may consider whether he was negligent or contributorily negligent in doing so.
 Should you find from a preponderance of the evidence that Tremayne Steele was negligent or contributorily negligent in the exercise of ordinary care for his own safety, then you may reduce the amount of damages, if any, to which the appellants are entitled by that percentage of his negligence.
 D-19
 The Court instructs the jury that the term "proximate cause" as used in these instructions should not be confused with the term "approximate cause." Proximate cause as applied to this case is a precise legal term, meaning, such cause as in the natural and continuous sequence, unbroken by an efficient intervening cause, produced the alleged injury and damages to the appellant's decedent and without which cause, said alleged damages and injuries would not have occurred.
 If you believe from a preponderance or the greater weight of the credible evidence, therefore, that the sole proximate *Page 603 
cause of the appellant's alleged damages and injuries were occasioned by the negligence of the appellant's decedent, Tremayne Steele, and/or J. McKee, then it is your sworn duty to return a verdict in favor of appellees or, if you believe from the evidence that said alleged damages and injuries were not proximately cause or contributed to by any negligence of appellees, then it is your sworn duty to return a verdict for the appellees Inn of Vicksburg and Joe Pitzer.
These instructions when read together allowed the jury to consider, as one possibility, that Tremayne Steele alone was responsible for his own death, despite the lack of evidence presented to overcome the presumption that Tremayne was incapable of exercising due care for his own safety and despite the lack of any evidence of Tremayne's own negligence.
The jury heard evidence regarding McKee's alleged failure to properly supervise Tremayne at poolside. The jury was adequately instructed on the law regarding this issue. Yet, without appellant's requested P-16 instruction and the giving of D-7A and D-19 instructions, we are simply left to speculate about the jury's verdict. We cannot say that the verdict did not reflect the jury's view that Tremayne Steele may have been responsible for his death by his own negligence.
In Johnson v. Howell, an instruction substantially similar to D-7A in the present case was granted. This Court stated:
 As an abstract proposition of law the quoted instruction is probably correct . . . but in this case the instruction was improperly granted . . . for the reason that the record shows no proof whatsoever as to any exceptional capacity of appellee. Appellant did not meet the burden which the law places upon him in that respect and of course it is elemental that no instruction should be granted without some evidentiary support.
213 Miss. at 199, 56 So.2d at 492.
Thus, it was error for the trial court to deny instruction P-16 requested by the appellant but to grant Instructions D-7A and D-19.
 CONCLUSION
After thorough examination of the issues raised on appeal, we hold that the trial court was correct in granting a directed verdict to Holiday Inns, Inc. A careful weighing of the evidence of record related to the standards established by this Court inHowell and Glorioso indicate that the defense failed to overcome the prima facie presumption that Tremayne Steele did not possess sufficient discretion or exceptional capacity to make himself guilty of contributory negligence in failing to exercise due care for his own safety.
The trial court erred in refusing instructions P-16 and in giving D-19 and D-7A. We affirm on the issue of directed verdict in favor of Holiday Inns, Inc. and reverse and remand on the issue discussed within this opinion.
AFFIRMED IN PART, REVERSED AND REMANDED IN PART.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN, BANKS, McRAE and JAMES L. ROBERTS, Jr., JJ., concur.
DAN M. LEE, P.J., concurs in results only.