GORDON, MINOR BY NEXT FRIEND *v.* CARR

No. 39979 · February 20, 1956 85 So. 2d 490

*Joseph E. Wroten,* Greenville, for appellants.

*Wynn, Hafter, Lake & Tindall,* Greenville, for appellee.

Roberds, P. J.

William Frank Gordon, then seven years of age, brought this action through his father and next friend, J. M. Gordon, against P. E. Carr to recover damages suffered by said minor from personal injuries he received through the alleged negligence of Carr in the driving of a Chevrolet one-half ton pickup truck. The negligence charged against Carr is that he "negligently drove his truck in a wide swing to the left and caused said truck to collide with the plaintiff"; that Carr failed to anticipate that said minor would run across the street and collide with Carr's truck, and that Carr was driving his truck at an excessive speed.

Defendant, in his plea, denied he was guilty of any of the foregoing acts, and denied he was guilty of any negligence, but, on the other hand, averred that Billy ran from behind another automobile and across the road immediately in front of the truck being driven by Carr, and that this action was the sole and only cause of the accident.

The jury returned a verdict for the defendant and the plaintiff appealed to this Court.

Appellant, on this appeal, argues some nine grounds of alleged error. We will pass upon those possessing sufficient merit to call for discussion.

The contention is urged upon us that the verdict of the jury, finding that Carr was not negligent, was against the great weight of the testimony, and that, for that reason, we should reverse and remand the case for trial by another jury on the liability issue. Appellant is called Billy throughout the record and we will so designate him in the remainder of this opinion.

The accident occurred just outside the city limits of Greenville, Mississippi. Reed Road runs generally east and west; Main Street Extended runs north and south. These two roads intersect and cross each other. At the northeast corner of the intersection is a stop sign directing traffic traveling west on Reed Road into Main Street. South of this stop sign, and across Reed Road and at the southeast corner of the intersection of said two roads, is located Sherman's Store. A few feet to the north of that store, and between it and Reed Road, was located, at the time of this accident, a small house in which Christmas fireworks were being sold. The accident happened on Reed Road, east of Main Street, opposite and north of Sherman's store and the temporary house for selling fireworks, which store and fireworks shelter were only a few feet south of the south edge of Reed Road.

P. E. Carr, the appellee, testified that he was driving from his place of business to his home in a Chevrolet half-ton pickup truck. He was going east on Reed Road; that it was about 5:15 o'clock in the evening of December 14, 1953; that travel on Reed Road and also on Main Street at this holiday season and at this time of day was very heavy. Automobile lights were on; that when he approached Main Street, traveling east, he stopped and looked every way for traffic; that several automobiles passed; that he put his truck in low gear and then into second and proceeded east across Main Street; that there was an automobile awaiting the green light signal standing at the northeast intersection of the two roads; that he could not see anyone standing north of Reed Road and near he stop signal; the parked car obstructed that view; that as he proceeded slowly, about 12 miles per hour, Billy dashed across Reed Road from a position north of that road about the location of the stop sign; that he appeared to be running about as fast as he could; that he ran immediately in front of the truck; that he did not see Billy until he was in front of the truck;

that he applied his brakes and his car skidded about four feet; that the center of the bumper struck Billy and he was knocked a short distance; that immediately he saw Billy he, Carr, put on his brakes and his car skidded; that he was in the south lane of the street, where he was supposed to be; that the accident happened some four to five feet from the south edge of the pavement on Reed Road; that his car was in good condition and he did everything possible to avoid the accident; that he ran to and gathered up Billy, and Mrs. Sherman, who was nearby, called an ambulance, and Billy was carried to a hospital, to which witness later went to learn his condition and render all possible assistance.

We might here add that Billy suffered a fracture of a bone in his right thigh. The doctor described it as a "simple fracture of the proximal 3rd".

Tommy Cain, fourteen years of age, testified he was at the firecracker stand south of Reed Road; that he saw Billy walk east across Main Street to the stop sign on the north side of Reed Road; this point was directly north across Reed Road from where the witness was standing south of that Road. Tommy said an automobile was standing at the stop sign on Reed Road, awaiting the signal to proceed into Main Street; that "* * * the center of the car was about even with the curb pulling around and he (Billy) looked down East Reed Road and he darted out". Again, "He didn't notice the car when he pulled out. He (Billy) looked one way and took off as fast as he could across the street"; that Billy had gone about 27 feet crossing Reed Road when he ran in front of the Carr truck; that Billy's body, after contact with the Carr truck, was about two feet from the south edge of the pavement. Again, Tommy said "He was running with all he had" crossing Reed Road.

The pertinent part of the testimony of Mr. Troy Rievley was that he was some 70 yards away from the scene of the accident, and that traffic was heavy at this time

of day and at the intersection of Reed Road and Main Street.

Miss Mary Frances Lowe testified she was at the firecracker stand just north of the Sherman store. She saw Billy standing beside the stop sign on the north side of Reed Road; the next thing she saw was when Billy was running across the street and was struck by the truck. She said "It seemed like he was running pretty fast". She said the Carr truck was "exactly where it was supposed to be, right in its normal place". She also testified that Carr "slammed on his brakes". Billy was hit about three steps from the south edge of the pavement. Traffic was heavy."

Marie Fiarnelli testified she was about 100 feet from, and was walking towards, the scene of the accident when it happened. She saw the truck hit Billy. She said he "tumbled about twice"; the truck was in its right lane; it continued after the collision four or five feet. She said Billy was knocked about four or five feet; that the truck, when it stopped, was about three or four feet from the pavement.

There were other witnesses but their testimony does not bear upon the question of liability.

██ █ From the foregoing it is readily seen that the finding of the jury that Carr was guilty of no negligence producing the injury to Billy was amply supported by the testimony. Indeed, on this record, it appears that the request of Carr for a peremptory instruction on liability should have been sustained.

Appellant asked for and the court refused to grant four instructions. He says these should have been granted.

██ █ The first instruction authorized the jury to assess punitive damages against Carr. It is evident at once that this is not a punitive damage case.

 █ The second instruction was a peremptory for the plaintiff. Such an instruction, very obviously, could not be granted plaintiff in this case.

 █ The third refused instruction told the jury Billy, being 7 years of age, could not be guilty of contributory negligence, unless defendant could, and did, prove that he was of exceptional intelligence for one of his age, and that the burden of so proving was upon Carr. It was not error to refuse this instruction. Defendant did not plead contributory negligence. He simply said he was guilty of no negligence; that the entire cause of this deplorable accident was the running across the street by Billy during this heavy traffic. Both questions were submitted to the jury and the jury very properly found that Carr was not guilty of negligence. Granting of a contributory negligence instruction, defining the burden of proving it, would only have confused the issues. Stokes v. Adams-Newell Lumber Co., 151 Miss. 711, 118 So. 441.

 █ The other refused instruction described the duty imposed upon Carr to keep a lookout for traffic, and to exercise reasonable and due care to anticipate the presence of children in the streets, and to keep his vehicle under control. The instruction might have been granted but it was not error to refuse it here. Plaintiff was granted another instruction announcing, in substance, the same principles as contained in the refused instruction. In addition to this, it is undisputed that Carr's view of Billy, when Billy was standing at the fire plug on the north side of Reed Road, and from which he started his run across Reed Road, was obstructed by a car standing in Reed Road, awaiting change of lights, and which automobile was directly between Carr and Billy. It is further shown that there was nothing in the surroundings where Billy was standing when he began his flight across Reed Road, which would indicate to a motorist situated as was Carr, that children were in that

locality, or, if so, that they would undertake to dash across the road.

Appellant complains of the granting of three instructions to defendant.

■■ One of these told the jury that Carr was not required to anticipate that Billy would run across the street in front of the pickup truck unless the jury believed from a preponderance of the evidence that Carr knew, ''or by the exercise of reasonable care should have known'' that Billy was at the northeast corner of the intersection of Reed Road and Main Street, even though Billy was only seven years of age. Ground of appellant's objection to this instruction is summed up in this statement ''The instruction is not a sufficient guide to the elements of negligence as they apply to a child of 7 years of age''. Granting of this instruction, under the facts of this case, was justified. In McMinn v. Lilly, 215 Miss. 193, 60 So. 2d 603, this Court said: ''But, of course, a motorist is not required to anticipate the action of another person on or along the highway, whether a child or an adult, unless he knows, or by the exercise of reasonable care should know, of the presence of such person. This rule does not impose liability if the motorist had used all reasonable precautions to avoid an accident and the sudden act of the child creates an emergency rendering it impossible for the motorist to avoid hitting the child. The accident in such case is said to be unavoidable and there is no liability''. This case was tried, and was submitted to the jury, upon the issues as to whether Carr used reasonable care and diligence to detect the presence of Billy at the stop sign north of Reed Road and to anticipate that Billy would ''dash'' across the road in front of his motor vehicle. The jury found for Carr on those questions, and, as stated above, was amply justified in so doing.

■■ Another instruction granted defendant, of which complaint is made, submitted to the jury the ques-

tions whether Carr used due diligence to detect the presence of Billy on the north side of Reed Road and in anticipating he might try to cross the road, and whether, after Billy started to run across the road, Carr used due precaution and diligence to detect that action on the part of Billy, and also whether he used that character of precaution to avoid the accident. We are unable to understand why this instruction was wrongfully given. It submitted to the jury the very questions to be decided.

The third instruction granted defendant, which appellant assigns here as reversible error, was an instruction telling the jury this was not a case for punitive damages. Clearly, as heretofore stated, it was not such a case.

■■ ■ On April 9, 1954, Mickey Johnston, a playmate of Billy's, while playing "cowboy", unintentionally jumped from a table upon Billy and broke a bone in Billy's leg. That was a distinct and different injury from that received December 14th—not a re-injury of the old break which resulted from the truck collision. Doctor Winn treated Billy for both injuries. His deposition was taken. Defendant objected to reading to the jury the answers of Dr. Winn which referred to the nature, pain and permanent effect of the April 9th injury. The court sustained the objection. It was entirely proper to hold that the testimony about the second injury was incompetent. Defendant had nothing to do with that. Questions and answers pertaining to the second injury were eliminated as the deposition was read to the jury. It is urged this should have been done by written motion. We do not see how this procedure in any way harmed the plaintiff. The deposition was taken subject to objections as to competency, etc. It might be added in this connection however that, according to the record, a large part of the deposition of Dr. Winn pertaining to the second injury did go before the jury. That was true also of the testimony of Mrs. J. M. Gordon, the

mother of Billy. The plaintiff got the benefit of that testimony pertaining to the second injury, a benefit to which he was not entitled.

When Dr. Winn was being interrogated about the nature and effect of the second injury defendant objected to that testimony while the deposition was being read to the jury, and the trial judge said: ''The jury may be advised that the court has held that the defendant is not to be held liable for any injury caused from the second break. With that exception you may go ahead.'' Again, while the deposition was being read, the court, in response to objection of defendant, said: ''The jury has been instructed they are not to consider anything having to do with the second injury.'' Appellant says this was an oral instruction to the jury on liability, which is not permitted under our practice. Those quotations embrace the reasons for the holding of the court that testimony about the second injury was not competent. However, as above stated, much of the testimony of Dr. Winn regarding the second injury did go before the jury, as did the testimony of the mother of appellant. The ruling of the court, at the time and in the manner set out, was not an instruction to the jury that Carr was not liable for the injury received in April, but the pronouncement of a reason why the testimony pertaining to the April injury was not competent.

Again, the effort to impose liability upon Carr for the second injury was based upon the idea that the first injury in some manner caused, or contributed to, the second injury. We find no proof to sustain that contention. The injury resulting from the cowboy playing did not affect the old injury. Another part of the body was affected by the second injury. And, in addition, the jury found Carr was in no manner liable for the first injury, with which he was directly connected, which finding necessarily meant that Carr could not be liable for the second injury, with which he had no connection

whatever. So that the oral statements of the judge, in ruling upon testimony pertaining to the second injury, could not have prejudiced the plaintiff-appellant in any manner whatsoever.

Affirmed.

*Hall, Arrington, Ethridge* and *Gillespie,* JJ., concur.