609 So.2d 1234 (1992)
Charles SPLAIN, a Minor
v.
Florence HINES.
No. 89-CA-00055.
Supreme Court of Mississippi.
August 26, 1992.
Rehearing Denied December 3, 1992.
*1236 Crymes G. Pittman, Joseph E. Roberts, Jr., Cothren & Pittman, Jackson, for appellant.
Michael W. Ulmer, Frank A. Wood, Watkins & Eager, Janet McMurtray, Jackson, for appellee.
En Banc.
ROBERTSON, Justice, for the Court:

I.
This appeal of a civil action presents at its core questions regarding the range of tolerable levels of generality of expression in jury instructions, singly and in the aggregate. The case arises from a near tragedy  a young woman motorist struck and stopped upon a twelve-year-old boy who darted out from behind an apartment building. The boy sued, but the jury found for the motorist.
After an adverse verdict, the boy claimed the instructions too general and incomplete to guide the jury adequately. On post-trial proceedings, the Circuit Court stuck by its guns. We affirm.

II.

A.
The scene is the yard in front of Apartment Building No. 5, a "townhouse" at the Hickory Knoll Apartments in Ridgeland, Madison County, Mississippi. It is Friday afternoon, August 17, 1984, a little after 6:15 p.m. The main roadway entering the apartment complex lies immediately to the west of No. 5 and proceeds in a north-south direction.
Charles Anthony (Cas) Splain, Jr., born April 7, 1972, was then a bit over twelve years and four months old. Cas lived in a three-bedroom townhouse at Hickory Knoll with his mother and sister. On this Friday evening, Cas was outside in front of Apartment No. 5 with at least six other boys  Jason Lewis, age fifteen, and Jason's brother, Appolo Lewis, age twelve, Matt Garner, Hunter Maples, his little brother, Lance Maples, and a boy named Robert. They were on and near the front steps of the apartment. These are the "big boys." A few other "little kids" were playing around nearby. Rizik Baltagi, age fourteen, was near the little kids on his bicycle. All were hidden from view of northbound motorists entering the complex and approaching from behind the building.
Appolo saw Rizik "was messing with" the little kids. Cas and his friends intervened, and Cas and Rizik exchanged words. Rizik told Cas to shut up, then in an instant gave the boys the "finger," mounted his bicycle, and pedaled out into the street, fleeing southerly. Their integrity thus impugned, the big boys gave immediate chase. "We all got up and proceeded to run to get Rizik," Jason said. "The kids seemed to be running as fast as they could  like they had a purpose," added Pete Wilson, a UPS delivery man who happened to be sitting in his truck nearby. Wilson saw the pursuing pack grouped in an eight to ten foot circle as they hit the street.
Try as we might, we cannot be exactly sure what happened next. According to Jason, "Matt, Appolo and Cas entered the street at about the same time." The big boys emerged in a cluster from the apartment and hit the street "pretty much simultaneously," according to Wilson, who added, "There were some ahead of the others." What we do know is that a ruddy red Honda Civic automobile driven by twenty-one-year-old Florence Hines, moving northerly, met the racing youths. Matt cleared Hines' car and Appolo "jumped over the left side of the car" as it suddenly stopped. Lance tripped and fell, a few feet from the car, and Jason fell over him. Cas, who seems to have been the third boy to enter the street, was not so fortunate. Emerging *1237 from the point closest to and most obscured by the apartment building and shrubbery, Cas slipped and hit  and was hit by  the right front of Hines' car.
Florence Hines, then a recent Millsaps College graduate with a double major in psychology and business administration, worked in the Millsaps Admissions Office. She had lived in the apartment complex for a number of months. She had left work about 4:30 that Friday afternoon and had gone shopping at McRae's with a friend. She drove home alone and entered the main roadway entrance of the apartment complex a little after 6:15 p.m. Hines stopped at the mailboxes, got out of her car, and found in her box only an advertising circular which she ignored.
Hines got back into her car and at this point was some 128 feet from the point where her car eventually collided with Cas Splain. She was to the rear or south of Apartment Building No. 5, and her view of its front yard was obstructed by the building itself and by shrubbery which extended within a few feet of the street. A tree stood ahead of the building in the front yard. Hines started her car and proceeded northerly. She saw no one ahead. At some point, Rizik met Hines and pedaled past on her left, but she took no note. She knew, of course, there were children in Hickory Knoll and that many lived in and around the area she was approaching.
According to Hines,
All of a sudden, I was driving and the boys appeared and there was a thump and it was all so simultaneous that there wasn't any time to sit there and acknowledge that anything was happening. It was all over before it had even started.
Hines added that the boys were "coming down at an angle" and that "Cas Splain ran into the side of my car." Hines stopped instantly. According to fifteen-year-old Jason Lewis,
the car hit him and it rolled over him and his head struck, I believe, the right side of the car and Cas' body, his arms, legs were rolled up in the wheel, and when the car stopped, the woman got out of the car immediately and she came around the front and we were trying to tell her, back the car up because the car is in his chest.
Hines quickly got back in the car and backed it off.
Cas was shortly on his way to St. Dominic Hospital for treatment, which included an hour and fifteen minute surgery. Cas suffered injuries which appeared quite serious at the time and which kept him hospitalized some thirteen days. Happily, on November 4, 1985  just short of fifteen months later  treating physician Dr. Glenn C. Warren was able to pronounce Cas fully recovered, an opinion shared by Dr. Frank Briggs.
Cas Splain, who does still have a scar on his stomach, remembers nothing of the accident.

B.
On November 15, 1984, Charles Anthony Splain, Jr., by his mother and next friend, Cathy Rhodes (hereafter sometimes "Splain"), commenced this civil action by filing a complaint in the Circuit Court of Madison County, Mississippi, naming Florence Hines as defendant. The complaint charged Splain had suffered serious personal injuries in the August 17, 1984, accident and said these injuries were the direct and proximate result of Hines' negligence. Hines answered, admitting the accident but denying fault.
On June 21, 1988, the case was finally called for trial. The parties augmented the testimony with numerous photographic exhibits  Hines' ruddy red Honda Civic and the street leading past Hickory Knoll Apartment No. 5 were both well photographed. After considerable combat about jury instructions, of which we will have more to say later, the Court submitted the case to the jury, which returned a verdict: "We, the Jury, find for the Defendant."
After denial of the usual post-trial motions, Cas Splain now appeals to this Court.

III.
Splain first argues the Circuit Court erred when it refused to hold Hines at fault *1238 and liable for his damages as a matter of law. He presented the point at trial in a motion for partial directed verdict on liability at the conclusion of all of the evidence. Rule 50(a), Miss.R.Civ.P. He renewed the point thereafter with his motion for partial judgment notwithstanding the verdict. Rule 50(b), Miss.R.Civ.P.
We are often presented an appeal of such a point and have articulated our law and disclosed our bent of mind in cases only slightly less numerous than the sands on the beaches, to-wit:
The motion for J.N.O.V. tests the legal sufficiency of the evidence supporting the verdict. It asks the court to hold, as a matter of law, that the verdict may not stand. Where a motion for J.N.O.V. has been made, the trial court  and this Court on appeal  must consider all of the evidence  not just the evidence which supports the non-movant's case  in the light most favorable to the party opposed to the motion. The non-movant must also be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point so overwhelmingly in favor of the movant that reasonable men could not have arrived at a contrary verdict, granting the motion is required. On the other hand, if there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied and the jury's verdict allowed to stand.
See, e.g., Andrew Jackson Life Insurance Co. v. Williams, 566 So.2d 1172, 1177 (Miss. 1990); Goodwin v. Derryberry Co., 553 So.2d 40, 42 (Miss. 1989); Guerdon Industries, Inc. v. Gentry, 531 So.2d 1202, 1205 (Miss. 1988); Stubblefield v. Jesco, Inc., 464 So.2d 47, 54 (Miss. 1984); Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652, 657 (Miss. 1975). Our review is largely de novo. But see, Mississippi Farm Bureau Mutual Insurance Company v. Garrett, 487 So.2d 1320, 1328 (Miss. 1986); City of Jackson v. Locklar, 431 So.2d 475, 478-79 (Miss. 1983).
This Court has long been committed to the rule that, when a motorist is driving at a reasonable rate of speed under the circumstances, and is keeping a proper lookout ahead, he or she is not liable for injuries to a child who darts from behind a fence, parked car or other obstruction so suddenly that the motorist cannot reasonably stop or otherwise avoid injuring the child. See, e.g., Smith v. Alford, 245 So.2d 188, 189 (Miss. 1971); Moseley v. Bailey, 193 So.2d 729, 731 (Miss. 1967).
Notwithstanding this rule and our limited scope of review, Splain would have us hold Hines liable as a matter of law. We may not do so. Neither plaintiff's effort to reduce everything to slow motion nor defendant's penchant for the flutter of old fashioned silent films are particularly helpful. Still, there is credible evidence before us that, after checking her mail, Hines proceeded ahead in a northerly direction, accelerating to be sure, but moving no faster than fifteen miles per hour or so, at all times keeping a reasonable lookout ahead, whereupon Cas Splain and his crew dashed from behind Apartment Building No. 5 and its adjacent shrubbery and into the street immediately ahead of her, so that with the greatest of care, she could not have avoided striking Cas. That the proof may yield another interpretation is beside the point. When we resolve in Hines' favor all conflicts in the evidence and give her the benefit of all reasonable favorable inferences from the evidence, we may only hold the evidence sufficient that the Circuit Court correctly denied Splain's motion for judgment notwithstanding the verdict. See Butler v. Lott Furniture Co. of McComb, 482 So.2d 1134, 1135 (Miss. 1986); Haver v. Hinson, 385 So.2d 605, 607-08 (Miss. 1980); Morris v. Boleware, 228 Miss. 139, 145, 87 So.2d 246, 248 (1956); Gordon v. Carr, 226 Miss. 836, 843, 85 So.2d 490, 493 (1956).
Splain relies heavily on McGee v. Bolen, 369 So.2d 486 (Miss. 1979). We see McGee quite distinguishable from the case at bar. In McGee, this Court held the defendant was negligent as a matter of law because *1239 he saw the group of children on the side of the road more than a quarter of a mile before reaching them. While he decreased his speed from 50 miles an hour to about 25 mph, this was not a sufficient precaution given that the children were visible.[1]McGee, 369 So.2d at 492. While Hines knew that children lived in the apartment complex, she did not see the children prior to the accident. If she had seen them, her duty of awareness would have been increased  perhaps to the point she would have been required to stop. McGee, 369 So.2d at 486.

IV.
Splain next presents a series of issues regarding jury instructions he sought and which the Circuit Court refused. Here we take a somewhat opposite attitude. We look at the evidence from the view of the party requesting the instruction, here the plaintiff Cas Splain. We accept that a party has a right to have his theory of the case presented to the jury by instructions, provided there is credible evidence that supports that theory. Alley v. Praschak Machine Co., 366 So.2d 661, 665 (Miss. 1979). cf. Heidel v. State, 587 So.2d 835, 842 (Miss. 1991). We elaborated the point in Hill v. Dunaway, 487 So.2d 807 (Miss. 1986).
The refusal of a timely requested and correctly phrased jury instruction on a genuine issue of material fact is proper, only if the trial court  and this Court on appeal  can say, taking the evidence in the light most favorable to the party requesting the instruction, and considering all reasonable favorable inferences which may be drawn from the evidence in favor of the requesting party, that no hypothetical, reasonable jury could find the facts in accordance with the theory of the requested instruction.
Hill, 487 So.2d at 809. On core issues, we accept as well the trial court's duty to explain its basis for rejecting an instruction proper under this standard or, in the alternative, to correct it. Clark v. Whiten, 508 So.2d 1105, 1109 fn. 2 (Miss. 1987); Byrd v. McGill, 478 So.2d 302, 305 (Miss. 1985). Our review, however, is not nearly so formalistic as this might imply.
The Circuit Court enjoys considerable discretion regarding the form and substance of jury instructions. Our overarching concern is that the jury was fairly instructed and that each party's proof-grounded theory of the case was placed before it. Rester v. Lott, 566 So.2d 1266, 1269 (Miss. 1990). We read the jury instructions as a whole, our focus upon what the jury heard and not on what was kept from it. We see how full the glass, not how empty. Defects or inadequacies in particular instructions do not trouble us, so long as the aggregate of the instructions, taken as a whole, fairly, though not necessarily perfectly, express the applicable primary rules of law. See, e.g., Payne v. Rain Forest Nurseries, Inc., 540 So.2d 35, 40-41 (Miss. 1989); Detroit Marine Engineering v. McRee, 510 So.2d 462, 465 (Miss. 1987); Tippit v. Hunter, 205 So.2d 267, 271 (Miss. 1967); Walker v. Polles, 248 Miss. 887, 896, 162 So.2d 631, 634 (1964).[2]
In this view, we find the context for considering Splain's complaints by getting well in mind what the jury was told. The Court began with garden-variety instructions regarding the burden of proof and definitions of "preponderance of the evidence" and "negligence." The meat began with Instruction No. 5 which told the jury of Hines' failure to keep a proper lookout theory.[3] Instruction No. 6 then advised the *1240 jury it should find Hines negligent if she were driving at an unreasonable rate of speed under the circumstances.[4] Instruction No. 7 explained the darting child theory of the Smith and Moseley cases cited above.[5] No other instructions addressed liability standards. This is after all a simple case, and the jury was simply instructed.
Plaintiff Splain sees the bones of these instructions a bit too bare and says he was entitled to have considerable flesh added thereto. He goes through four renderings of his Instruction No. 9 and charges that the Circuit Court committed reversible error when it refused to grant at least one version thereof. The record reflects that plaintiff first requested Instruction No. P-9, then an amended version of P-9, then P-9a, and finally an amended version of P-9a. We do not think it unfair to hold summarily that the first three of these  Instructions Nos. 9, 9 as amended, and P-9a, were correctly rejected, on grounds, inter alia, they contained incorrect statements of law, were confusingly worded, or were otherwise improper. We find in these quotes from cases, and instructions sanctioned elsewhere, spliced together and by their aggregate complexity rejectionable. Splain's fourth shot  the amended version of Instruction No. P-9a  is closer to the mark and we recite it in full.
The Court instructs the jury that if you find from a preponderance of the evidence in this case that the defendant, Florence Hines knew or had reason to know that children were likely to be in the vicinity where she was operating her motor vehicle at the time of the accident and she failed to use reasonable care to avoid striking the minor herein, then Florence Hines was negligent, and if you further find from a preponderance of the evidence that such negligence, if any, was a proximate contributing cause of the accident in question and the injuries sustained therein by Charles Splain then it is your sworn duty to return a verdict for Charles Splain, against Florence Hines.
This instruction fails to particularize any form of negligence, such as driving at an unreasonable rate of speed, failure to keep the proper lookout, or the like. Still, the Court would not have erred had it granted the instruction. Despite her protestations to the contrary, there is evidence from which the jury could reasonably have found Hines knew or had reason to know that children were likely to be in the vicinity at the time. On the other hand, considering the instructions as a whole, we do not think its refusal should occasion reversal. As in Gordon v. Carr noted above on a like point,
the instruction might have been granted but it was not error to refuse it here. *1241 Gordon, 226 Miss. at 843, 85 So.2d at 494. More appropriately, the Court did not abuse its discretion.

V.
Splain complains that the Circuit Court refused to instruct the jury that a person is presumed to have seen that which she should have seen by the use of ordinary care. That request was embodied in Instruction No. P-15.[6] Without doubt, it is settled in our law of negligence that a person is presumed to have seen what he should have seen by the use of ordinary care. Knapp v. Stanford, 392 So.2d 196, 198 (Miss. 1980). See, e.g., Shurley v. Hoskins, 271 So.2d 439, 444 (Miss. 1973); Tippit v. Hunter, 205 So.2d 267, 271 (Miss. 1967); Campbell v. Schmidt, 195 So.2d 87, 89 (Miss. 1967).
The Circuit Court rejected Instruction No. P-15 by reason of its abstractness and potential to mislead.
P-15 is also not an incorrect statement of the law but it is taken out of context and I think its potential to mislead the jury is great. It does not say which person is charged with the duty of seeing which he should have seen by the use of ordinary care. This could have easily applied to Mr. Splain. He is charged with seeing the car if by the exercise of ordinary care, he could have seen the car. So I think the instruction as submitted is too abstract in making proper language.
We have long condemned abstract instructions, see, e.g., Harkins v. Paschall, 348 So.2d 1019, 1023 (Miss. 1977); Nielson v. Miller, 259 So.2d 702, 706 (Miss. 1972); Freeze v. Taylor, 257 So.2d 509, 511 (Miss. 1972). Of late where we instruct our juries that all instructions must be considered as a whole, we do not consider abstractness as much of a vice, though we still do not regard it a virtue. We think it important here that the Court did instruct the jury it should find Hines negligent if it found
immediately prior to the accident [she] failed ... to maintain a reasonable and proper lookout for children and other pedestrians... .
We do not regard it reversible error that the abstract Instruction P-15 was not given.[7]

VI.
Splain next argues the Circuit Court erred reversibly when it denied his requested instruction that at the time of the accident he was a minor and did not possess sufficient discretion so that he might be guilty of any negligence.[8] No doubt, our law is settled that a minor child between the ages of seven and fourteen years is rebuttably presumed not to possess sufficient discretion that he may in law causally contribute to his injuries. See, e.g., Burlingame v. Southwest Drug Stores of Mississippi, Inc., 203 So.2d 74, 77 (Miss. 1967); Moak v. Black, 230 Miss. 337, 351, 92 So.2d 845, 852 (1957). In Glorioso v. Young Mens Christian Association of Jackson, 556 So.2d 293, 295 (Miss. 1989), we held failure to instruct on this point was reversible error. Glorioso was an unusual case in which a nine-year-old child, with the express permission of defendant's agent, was playing with a dangerous item he did not encounter every day. Moreover, Glorioso was factually a close case on liability. Glorioso, 556 So.2d at 295.
In Morris v. Boleware, 228 Miss. 139, 87 So.2d 246 (1956), the court's total charge to the jury was essentially the same as here. Defendant's Instruction No. 2 in Morris was legally identical to Instruction No. 7 here. Morris, 228 Miss. at 145, 87 So.2d at 247-48. Morris held the jury fairly instructed and affirmed a defense verdict. *1242 That plaintiff in Morris did not ask an instruction on the presumption does not diminish the holding that the Morris jury was fairly instructed. In Gordon v. Carr,[9] 226 Miss. at 843, 85 So.2d at 494, we rejected the precise point Splain now raises but did so on grounds the defendant "did not plead contributory negligence." Here, Hines pleaded contributory negligence, but the Circuit Court refused to instruct on the issue. Since nothing before the jury told it Splain might be charged in law with contributory negligence, we consider this case analogous to Gordon.
Davis v. Waterman, 420 So.2d 1063 (Miss. 1982), is instructive. A thirteen-year-old child riding a motorcycle was struck and killed by a motorist at a traffic intersection. The jury found for the defendant motorist and the child's administratrix appealed. It seems the trial court had instructed the jury it could consider the child's negligence if it found from the evidence the child "from his age, intelligence, knowledge and experience has sufficient discretion to be charged with negligence." Davis, 420 So.2d at 1065. Davis is somewhat the converse of today's case, and this Court affirmed. Not only did the Court find evidence the child was sufficiently experienced to know what he was doing, we further held where the child operates "a motor-propelled vehicle" he is held as an adult, the presumption notwithstanding. Davis, 420 So.2d at 1066-67. Cas Splain was not operating a motor-propelled vehicle, but we do not think it unfair to suggest he and every other twelve-year-old knows or reasonably should know better than  without looking  to sprint into a street from behind an obstruction. The Davis principle strongly suggests there is no error here.
Glorioso is on the books. It is an unusual case, likely beyond the ken and experience of the average juror. Fuller instructions may be needed in such cases. Accepting Glorioso's teaching that in unusual cases the instruction should be given, we think it wholly distinguishable today and on principle. Because the darting child phenomenon is one all can appreciate and because practically every parent beats it into his or her child he or she should be careful entering streets, the presumption instruction was not necessary. At most, the Circuit Court's refusal to approve Instruction P-14 was harmless error. See Section IV above.

VII.
Splain complains bitterly that the Court granted Instruction No. 7, Hines' original requested Instruction D-4A. This is the instruction that submitted the darting child theory to the jury. Splain leads us through a slow, slow motion review of the facts and appears to have convinced himself that, first, the fleeing Rizik on bicycle and, if not him, Matt Garner and Appolo Lewis, preceded Cas Splain into the street by such a substantial period of time that Hines was charged with actual knowledge of children in the area and obliged to brake, to slow down, and to come to a complete stop, if necessary. See McGee v. Bolen, 369 So.2d at 493.
Splain, of course, has his law backwards on this point. Hines requested Instruction D-4A, an instruction which presented her theory of the case and with respect to which there was substantial evidentiary support in the record. See, e.g., Hill v. Dunaway, 487 So.2d at 809; Alley v. Praschak Machine Co., 366 So.2d at 665. For much the same reasons that the Circuit Court correctly denied Splain's motion for judgment notwithstanding the verdict, the Court was correct when it overruled his objections to this instruction being presented to the jury.

VIII.
Splain finally argues that the Circuit Court abused its discretion when it denied his motion for a new trial. See Rule 59, Miss.R.Civ.P. The standards by which the Circuit Court should consider such a motion are settled.
(1) Has the search for the true facts proceeded as far as it reasonably may *1243 under the peculiar facts and circumstances of the case? (2) To what extent would it be unfair to the party in whose favor the verdict was returned in effect to give that party's adversary a second bite at the apple? (3) Considering the evidence, is there a substantial basis for believing that the jury disregarded their oaths and failed to follow the instructions of the Court in reaching its verdict? (4) Assuming arguendo that the verdict is unjust (by reference to the underlying facts of the transaction or occurrence, the complete truth of which we will never know), what is the impact of that "injustice" upon the party against whom the verdict has been returned? (5) If a new trial is ordered, will the party in whose favor the verdict has been returned be deprived of some fair advantage he enjoyed in the first trial? and (6) Are there any other factors present, peculiar to the particular case of the parties, that would render just or unjust the grant or denial of a new trial?
Kitchens v. Mississippi Insurance Guaranty Association, 560 So.2d 129, 132 (Miss. 1989). Applying these standards, we cannot say that the Circuit Court abused its discretion.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER and BANKS, JJ., concur.
PITTMAN, J., dissents with separate opinion, joined by SULLIVAN and McRAE, JJ.
McRAE, J., dissents with separate opinion, joined by SULLIVAN, J.
PITTMAN, Justice, dissenting:
I cannot concur with the majority's attempt to distinguish the facts of this case from those in Glorioso v. Young Mens Christian Association of Jackson, 556 So.2d 293 (Miss. 1989). The majority claims that Glorioso was an "unusual case" and that it stands for the proposition that an instruction such as P-14 should be given only in unusual cases. Such a holding, however, is contrary to the language in Glorioso:
The law with respect to contributory negligence on the part of minors is clear. A minor child between the ages of seven and fourteen years is prima facie presumed not to be possessed of sufficient discretion to make him guilty of contributory negligence, and hence the defendant who raises such defense has a greater burden to prove the same than in a case where the plaintiff is not a minor child. Johnson v. Howell, 213 Miss. 195, 56 So.2d 491 (1952); Moak v. Black, 230 Miss. 337, 351, 92 So.2d 845, 852 (1957); Burlingame v. Southwest Drug Stores of Mississippi, 203 So.2d 74, 77 (Miss. 1967).
Glorioso, 556 So.2d at 295 (emphasis added).
This Court did not hold that a minor is presumed not to be contributorily negligent only in "unusual cases." As in Davis v. Waterman, 420 So.2d 1063 (Miss. 1982), the presumption in favor of the minor must be overcome. This case simply does not rise to that of Davis where a minor was operating a "motor-propelled vehicle."
Splain was entitled to the instruction. Without P-14, the jury was not fully informed as to the applicable law. "All instructions taken as a whole must fairly announce the applicable primary rules of law." Glorioso, 556 So.2d at 295. "The absence of the requested instruction was misleading to the jury." Id. The jury cannot be expected to know the intricacies of the law  that is the purpose of jury instructions. I would reverse and remand the lower court judgment.
SULLIVAN and McRAE, JJ., join this opinion.
McRAE, Justice, dissenting:
I respectfully dissent. In Hill v. Dunaway, 487 So.2d 807 (Miss. 1986), we set out the standard of review in cases involving refused jury instructions. The members of the majority quoted Hill in their opinion. They promptly forgot it, however, so it bears quoting again:

*1244 The refusal of a timely requested and correctly phrased jury instruction on a genuine issue of material fact is proper, only if the trial court  and this Court on appeal  can say, taking all the evidence in the light most favorable to the party requesting the instruction, and considering all reasonable favorable inferences which may be drawn from the evidence in favor of the requesting party, that no hypothetical, reasonable jury could find the facts in accordance with the theory of the requested instruction.

Hill, 487 So.2d at 809 (emphasis added). At least three of the plaintiff's instructions which the trial court refused were solidly grounded in both law and evidence. I believe the trial court committed reversible error in refusing them.

I.
The trial court committed its most obvious error in refusing to grant Splain's proposed instruction P-14. The instruction states:
The Court instructs you that Charles Splain is to be presumed by you to not have possessed sufficient discretion at the time of the accident to make him guilty of any negligence in failing to exercise due care for his own safety.
The trial court's refusal to grant this instruction is directly contrary to our holding in Glorioso v. YMCA of Jackson, 556 So.2d 293 (Miss. 1989). In Glorioso, a nine-year-old boy was killed by a rolling log on which he and other children had been playing. The defendant had encouraged the children to play on the log. At trial, the plaintiff requested the court to instruct the jury that a nine-year-old child is presumed to be incapable of contributory negligence. The trial court refused the instruction. This Court reversed, stating:
The law with respect to contributory negligence on the part of minors is clear. A minor child between the ages of seven and fourteen years is prima facie presumed not to be possessed of sufficient discretion to make him guilty of contributory negligence... .
On examining the pleadings and evidence, we agree with the appellants that the jury could have easily concluded, in the absence of the requested instruction, that Seth Glorioso was negligent in playing on the log and in jumping the wrong way when it began to roll and was responsible for his own death. This conclusion is erroneous and contrary to the law of this state... .
The absence of the requested instruction was misleading to the jury. As we stated in Allen v. Blanks, [384 So.2d 63, 65 (Miss. 1980)], in a cause which is factually close on the liability issue ". .. even slight prejudice must be assumed to have been outcome-determinative." 384 So.2d at 69.
We conclude that the Gloriosos' motion for a new trial should have been sustained.
Glorioso, 556 So.2d at 294-95.
The majority summarily dismisses Glorioso as "an unusual case, likely beyond the ken and experience of the average juror." I am not sure what that means, but the fact remains that the principles set out in Glorioso are directly applicable here. Twelve-year-old Splain ran out into the path of Hines' automobile, presumably without looking to see if a car was coming. It would be a rare juror indeed who would fail to note that Splain's actions directly contributed to his injury. How can we know that the jury did not find for the defendant on grounds that Splain brought misfortune upon himself? We cannot assume that the jury was familiar with the presumption against contributory negligence in cases involving seven- to fourteen-year-old minors. As in Glorioso, "[t]he absence of the requested instruction was misleading to the jury" and should mandate reversal.
Today's holding is contrary to Glorioso and thus violates a clear judicial precedent. The majority, of course, has the power to overrule Glorioso, but it refrains from doing so. As it stands now, we have two contradictory rulings on substantially identical cases. I suppose we must wait until another day to find out which position will eventually prevail.

*1245 II.
I would also hold that the trial court erred in refusing Splain's proposed jury instruction P-9(a) which reads as follows:
The Court instructs the jury that if you find from a preponderance of the evidence in this case that the defendant, Florence Hines knew or had reason to know that children were likely to be in the vicinity where she was operating her motor vehicle at the time of the accident and she failed to use reasonable care to avoid striking the minor herein, then Florence Hines was negligent, and if you further find from a preponderance of the evidence that such negligence, if any, was a proximate contributing cause of the accident in question and the injuries sustained therein by Charles Splain then it is your sworn duty to return a verdict for Charles Splain, against Florence Hines.
This Court in McGee v. Bolen, 369 So.2d 486 (Miss. 1979), charged the drivers of automobiles with a responsibility to take whatever steps are necessary to avoid striking pedestrian children where children are obviously present and likely to enter the roadway. McGee states: "[D]rivers of automobiles are charged with the duty to expect children to do the unexpected, to understand that they may do the ununderstandable and unpredictable, and will act upon a second's impulse." 369 So.2d at 492. The victim in McGee was a small child playing among a group of other children along the edge of a highway. The defendant driver saw the children well in advance and reduced speed from fifty-five miles and hour to twenty-five miles an hour. As the driver came abreast of the children, a child which the driver had not previously seen ran out into the roadway, impacted with the defendant's automobile, and was killed. This Court found the defendant liable as a matter of law.
The majority seeks to distinguish McGee by asserting that unlike the defendant in McGee, the defendant in this case had no advance warning that children were playing near the roadway. The record contradicts the majority's position. First, defendant Hines admits that she knew, long before the incident occurred, that children frequently played at the very spot where she struck plaintiff Splain. Even more importantly, the record establishes that fourteen-year-old Rizik Baltagi rode his bicycle across Hines' path only seconds before the other boys, including Splain, entered the street on foot. The sudden appearance of Baltagi should have put Hines on notice that other children might be following close behind.
If the majority had read McGee more closely, it would have discovered that the two cases are, for our purposes, virtually indistinguishable. In McGee, the defendant saw children playing near the road as he approached the scene. In this case, defendant Hines saw (or should have seen) Baltagi riding his bicycle in the street as she approached the scene. In both cases, the defendants were on notice that children were playing in the area. In both McGee and the instant case, the defendant drivers did not see the particular children they struck until it was too late to avoid contact. In the instant case, Splain ran out from behind an apartment building; in McGee, the victim ran out either from behind some other children or from behind some bushes. Nevertheless, the Court in McGee found that "[a]lthough [the victim was] not himself visible to appellee he was among those who were visible to him and was entitled to the stern care and caution that belonged to those clearly within appellee's view." McGee, 369 So.2d at 492. The record suggests that defendant Hines was even more careless than the defendant in McGee. At least the defendant in McGee noticed the presence of children and slowed down. Hines does not even remember seeing Baltagi despite his having ridden his bicycle immediately in front of her. From this we can infer that she was looking in another direction or otherwise failing to pay attention to what was happening ahead.
Clearly, the record contains ample evidence to support proposed instruction P-9(a), particularly when the evidence, along with the inferences drawn therefrom, are viewed in the light most favorable to the plaintiff. The defendant "knew or had reason *1246 to know that children were likely to be in the vicinity where she was operating her motor vehicle at the time of the accident," and, applying the standard set out in McGee, the evidence suggests that "she failed to use reasonable care to avoid striking the minor herein."
The majority complains that Instruction P-9(a) "fails to particularize any form of negligence, such as driving at an unreasonable rate of speed, failure to keep the proper lookout, or the like." As the majority acknowledges elsewhere in its opinion, however, we view jury instructions in the aggregate, not in isolation. Payne v. Rain Forest Nurseries, Inc., 540 So.2d 35, 40-41 (Miss. 1989). Other instructions which the trial court granted (in particular, requested instructions P-6, P-7, and D-4(a)), fully supply the details which instruction P-9(a) lacks. I would hold that the trial court erred in refusing to grant the instruction.

III.
I further disagree with the majority regarding proposed instruction P-15. Instruction P-15 states:
The Court instructs the jury that a person is presumed to have seen that which she should have seen by the use of ordinary care.
The majority contends that the trial court did not err in refusing this instruction because it is "abstract" and "misleading." To the contrary, proposed instruction P-15 cuts straight to the heart of this case. It is an accurate statement of the law. See Shurley v. Hoskins, 271 So.2d 439, 444 (Miss. 1973). Further, it is singularly pertinent to the instant matter and is supported by the evidence. First, it applies to Hines' admitted failure to see Baltagi ride his bicycle across the street in front of her. There is absolutely no way that a person exercising "ordinary care" could fail to see a child ride a bicycle across a street in broad open daylight where the street is flat and straight, and particularly where the area is one in which children are known to congregate. The jury should have been permitted to presume that Hines saw Baltagi and that Hines thus knew that children were present.
Secondly, the instruction applies to Hines' admitted failure to see Splain until she had already struck him. Hines testified that Splain ran into the "side" of her car. The photographs of the car tell a different story. The dents resulting from the impact are clearly situated at the right front corner of the car. Further, simple logic declares that since Hines' right front tire came to rest on top of Splain's torso, Splain must have fallen after being struck by the front of the car, not the side. Otherwise, his torso could not possibly have gone under the right front tire. Since Splain was at all relevant times in front of Hines' automobile, he was undeniably within her field of vision from the moment he emerged from behind the apartment building. Viewing the evidence and the ensuing inference in the light most favorable to Splain, there is at least a question of fact as to whether Hines "should have seen [Splain] by the use of ordinary care." The jury should have been instructed that if they answered the question affirmatively, then they should presume that Hines saw Splain run from behind the apartment building and into the street. Such a presumption might well have altered the outcome of this case. Accordingly, I believe that the trial court committed reversible error in failing to grant proposed instruction P-15.

IV.
The trial court clearly erred in refusing to grant proposed instructions P-9(a), P-14, and P-15. I would reverse and remand for a new trial.
SULLIVAN, J., joins this opinion.
NOTES
[1] In McGee, the child who darted into the road, seemingly from the group of children standing on the side, was four and one-half years old.
[2] We find that the Circuit Court instructed the jury regarding these premises, to-wit:

You are not to single out one instruction alone as stating the law, but you must consider these instructions as a whole.
(Instruction No. 1, filed June 17, 1988.)
[3] Instruction No. 5, which had originally been plaintiff's requested instruction P-6, as given the jury reads:

The Court instructs the jury that if you find from a preponderance of the evidence in this case that Florence Hines immediately prior to the accident failed to exercise ordinary and reasonable care by failing to maintain a reasonable and proper lookout for children and other pedestrians then Florence Hines was negligent and if you further find from a preponderance of the evidence that such negligence, if any, was the sole proximate cause or a proximate contributing cause of the accident and the injuries sustained by Charles Splain, therein, then you shall return a verdict for Charles Splain, against Florence Hines.
[4] Instruction No. 6 which had originally been plaintiff's requested instruction P-7 reads as follows:

The Court instructs the jury that if you find from a preponderance of the evidence in this case that at the time of the accident that Florence Hines was driving her vehicle at a speed greater than safe considering the circumstances then and there existing then Florence Hines was negligent, and if you further find from a preponderance of the evidence that such negligence, if any, was the sole proximate cause or a proximate contributing cause of the accident and the injuries sustained by Charles Splain, therein, then you shall return a verdict for Charles Splain, against Florence Hines.
[5] Instruction No. 7 which was originally defendant's requested instruction D-4A reads as follows:

If you find from the evidence in this case that Florence Hines was operating her car at a reasonable speed and was keeping a proper lookout, and that plaintiff suddenly darted out from behind the bushes between the street and Building No. 5 along with some other children so that Florence Hines could not stop or avoid injury to plaintiff in the exercise of reasonable care, then your verdict must be for the defendant, Florence Hines.
This instruction, as with others, is appropriate where there is before the Court an evidentiary basis upon which the jury could find the factual predicates to the suggested end. See Hill v. Dunaway, 487 So.2d 807, 809 (Miss. 1986).
[6] Plaintiff's requested jury Instruction No. P-15 reads as follows:

The Court instructs the jury that a person is presumed to have seen that which she should have seen by the use of ordinary care.
[7] Regarding Instruction P-15, see Bridges v. Crapps, 214 Miss. 126, 133, 58 So.2d 364, 366 (1952).
[8] Jury Instruction No. P-14:

The Court instructs you that Charles Splain is to be presumed by you to not have possessed sufficient discretion at the time of the accident to make him guilty of any negligence in failing to exercise due care for his own safety.
[9] Gordon was tried in the days when the jury received the pleadings of the parties.